UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
RONALD WALKER and KIMBERLY
WALKER,                                         :
                                                :
         Plaintiffs,              :         Hon. Joseph H. Rodriguez
                                                :
    v.                                         :         Civil Action No. 12-4223
                                                :
WALKER BROTHERS FISHERIES, LLC,   :         **OPINION**
JOHN DOES 1-10, and THE DOE LEGAL :
ENTITY 1-10,                                 :
                                                :
         Defendants.                       :
_____

This matter is before the Court on motion for summary judgment. The Court has considered the written submissions of the parties in addition to the arguments advanced at the hearing on July 29, 2014. For the reasons set forth on the record at the hearing and those set forth below, the motion for summary judgment is denied.

## I.   Background

Plaintiff Ronald Walker was injured when his oilskins were caught in the winch of his vessel, the Constantino L ("Vessel"), on August 6, 2009.[1] His leg was mangled beyond repair and amputated several days later. On the date of the injury, Plaintiff was captain of the Vessel.[2] Plaintiff is also a member of the company that owned the Vessel on the date of the injury, Walker Brothers Fisheries, LLC. Walker Brothers Fisheries,

---

[1] Oilskins are foul weather gear. The men were wearing the gear on the ship that day because it was raining and windy. The weather and sea conditions are alleged to be a factor in the events leading up to the accident.

[2] Plaintiff has served as captain of the Vessel since 2001.

1

LLL ("Company") is a New Jersey limited liability company of which Plaintiff and his brother, John Walker, are each 50% owners.

Immediately before his injury, Plaintiff had been unsnapping rings from the seine line.[3] At the time of his injury, Plaintiff was tightening the purse line of the fishing net to raise the rings, as he had done hundreds of times before his injury.[4] (Ronald W. Walker 1/27/14 Dep., p. 35-36.) By this time, he had already turned the capstan on, which serves to tighten the purse line. (Ronald W. Walker 1/27/14 Dep., p. 29.) As Plaintiff was tightening the purse line, he "rock[ed] toward [the winch]," causing his oilskins to get caught in the winch. (Darren Walker 2/04/14 Dep., p.11.)[5] After going around several times, it caught his pant leg, resulting in his injury. Upon getting caught, he was unable to reach the hydraulic controls, although he tried to grab them. (Ronald W. Walker 1/27/14 Dep., p. 37.)[6] Ultimately, Blake Walker—the closet crewmember to the Plaintiff at the time of injury—was able to go through the pilothouse port door and turn off the control.

Plaintiff admits that it was possible for another crewmember to have operated the hydraulic controls while he took up the slack.[7] Plaintiff also admits that, as captain, he could have relocated the capstan controls prior to his injury. As owner of the company, Plaintiff also admits that he could have installed the controls in a different location. However, Plaintiff did not know of any other boats in the bunker fishery that had a

---

[3] At this time, Plaintiff was standing outside the pilothouse.
[4] Tightening the purse line requires wrapping the purse line spool around the winch and winding it up until the rings come up. The purse line is tightened using the capstan. This is required because the snap rings sometimes drop down when taking the net in.
[5] The winch is where the cable gets wrapped around. It is used to haul in the net.
[6] The hydraulic controls were located forward of the capstan, just inside the entrance to the pilothouse. Plaintiff claims that they were out of arms reach.
[7] There were four other crewmembers on the Vessel on the day of Plaintiff's injury.

cutoff switch installed on the capstan prior to his injury, and Plaintiff did not come to the conclusion that the handles were too far away until after his injury.

As the captain, Plaintiff assigned the crewmembers their duties, assigning himself to run the power block and capstan and unhook snap rings from the purse line. [8] Plaintiff was also the one who gave the order to set the fishing net. Plaintiff is also responsible for making sure that the Vessel met the United States Coast Guard requirements. As a member of Company, Plaintiff kept the books and signed checks on behalf of the company. John Walker, the only other member of the Company, did not sign any checks or agreements for the Company, except while Plaintiff was recovering from his injury. As owner of the Company, Plaintiff had an obligation to make sure the Vessel was seaworthy and was directly involved in the maintenance and upgrades of the Vessel. Accordingly, if an unsafe condition was observed on the Vessel, it would be reported to Plaintiff. He has authorized safety improvements and has authorized vendors to perform maintenance and repairs on the Vessel. Plaintiff has never made a recommendation to change, replace, modify, or perform maintenance on the Vessel and had that recommendation been denied.

After Plaintiff's injury, the capstan controls remained in the same location on the Vessel and the Vessel continued to bunker fish for the Company. However, because of his amputation, Plaintiff had a long recovery period and did not return to the boat. At some point during his recovery, the Vessel was removed from service as a purse seine boat. The Company eventually installed the capstan from the Vessel on the company's

---

[8] The power block is responsible for bringing the net in.

new catch vessel, the FN Morning Star. However, Plaintiff designed a safety switch and new valves so they could be more easily reached.[9] [10]

## II. <u>Summary Judgment Standard</u>

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)); <u>accord</u> Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once

---

[9] The cutoff switch could not have been designed for the original Vessel because the original Vessel was not electric.
[10] The new valves are installed right above the capstan. They have spring-loaded controls.

the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Discussion

Defendant moves for summary judgment on three grounds.  First, Plaintiff's claims must be dismissed because Walker is the controlling member of the Company and

responsible for the fitness of the Vessel and the maintenance and operation of the winch which caused his injury. Alternatively, maritime law does not permit a captain of a vessel to prevail against an owner of the vessel where the captain had a primary duty to mitigate the dangerous condition that caused his injury and failed to do so. Finally, Walker's unseaworthiness claim fails because he cannot show that the Vessel was not reasonable fit for its intended purpose. The Court will address the issues in turn.

### A. New Jersey Law Permits Plaintiff to Sue Walker Brothers Fisheries, LLC.

The initial basis for Defendants' Motion for Summary Judgment is that Plaintiff is precluded from bringing his claims against an association of which he is a member. This case presents a novel issue before this Court and the parties are unaware of any case in New Jersey that is directly on point. In pursuing the claim against Walker Brothers Fisheries, Walker is essentially suing himself— or at least the corporate version of himself. Under New Jersey law, there is nothing preventing Plaintiff from pursuing his claim.

"The rights of a member against a partnership or unincorporated association vary depending on the law of the State in which the association is formed and is operating." Walsh v. Zuisei Kaiun K. K., 606 F.2d 259, 264 (9th Cir. 1979). New Jersey law controls, as Walker Brothers Fisheries is a New Jersey limited liability company which operates in New Jersey. Although New Jersey has considered and permitted a member of a volunteer association to sue that association, it has never considered this issue in the context of a limited liability company consisting of only two members. See Buteas v. Raritan Lodge #61 F. & Am., 248 N.J. Super. 351 (App. Div. 1991).

6

Other courts have considered this issue and two views have surfaced. The traditional view is that the negligence of the association is imputed to the plaintiff member, thus barring recovery from the association for personal injuries. <u>Strom v. M/V "Western Dawn"</u>, 698 F. Supp. 212, 213-14 (W.D. Wash. 1986) (citing <u>Carr v. N. Pac. Beneficial Ass'n</u>, 128 Wash. 40, 45-46 (1924). A more liberal view focuses on "the nature and extent of the member's ability to determine the policy of the association or partnership." <u>Strom</u>, 698 F. Supp at 214.

The record reflects that Plaintiff owned 50% of the Company, kept the books for the Company, and paid the bills on behalf of the Company. Plaintiff also arranged for the maintenance and repairs of the Company's vessels. Plaintiff also authorized safety improvements. All of Plaintiff's recommendations to either modify or perform maintenance on the Vessel were approved. There is no dispute as to these facts.

The Court finds that pursuant to <u>Buteas</u>, Plaintiff may pursue his claim. Plaintiff's comparative or contributory negligence my temper his recovery, but the extent of Plaintiff's negligence, if any, is a question of fact. As the New Jersey Supreme Court stated in <u>Buteas</u>:

> [W]e are aware that the plaintiff-member may in fact bear some degree of actual culpability for the conduct which resulted in his injury by reason of his participation in the management of the association's affairs or in otherwise creating the risk of harm which eventuated in his injury. But a degree of actual culpability provides, in our view, no sound basis for barring him from suit any more than any other form of contributory negligence would. We have in this jurisdiction well-established rules of comparative negligence by which a plaintiff can be held chargeable to the extent his own conduct has contributed to the harm he has suffered. These rules are fully applicable in an action by a member against a voluntary association when the member's negligence, based on his participation in any form in the creation of the risk, may have contributed to his injuries. That participation may result in a reduction of his recovery. It may even preclude recovery if the finder of fact concludes that plaintiff's negligence is greater than 50%. But the mere potential for assessment of a degree of

culpability against him cannot bar the action any more than a contributory negligence claim in any other context could.

Buteas, 248 N.J. Super. at 362.

On summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. New Jersey law permits Plaintiff's claim; Walker's role in the accident presents a question of fact for the jury.

### B. JONES Act Negligence and Unseaworthiness

Defendant moves for summary judgment on the claims of Jones Act negligence and unseaworthiness. Although some of the reasoning supporting Defendant's motion does not overlap with respect to these separate claims, Defendant's chief argument is that the primary duty doctrine precludes Plaintiff from recovering against Defendant because Walker was in control of all of the aspects of the company, including the very equipment he complains caused his accident.

The primary duty rule precludes "a seaman-employee . . . from [recovering against] his employer for injuries caused by his own failure to perform a duty imposed on him by his employment." California Home Brands, Inc. v. Ferreira, 871 F.2d 830, 836–837 (9th Cir. 1989) (citing Reinhart v. United States, 457 F.2d 151 (9th Cir. 1972)). Put differently, "[t]he primary duty rule provides that a ship's officer may not recover against his employer for negligence or unseaworthiness when there is no other cause of the officer's injuries other than the officer's breach of his consciously assumed duty to maintain safe conditions aboard the vessel." Wilson v. Maritime Overseas Corp., 150 F.3d 1, 11 (1st Cir. 1998).

The primary duty rule relieves an employer of liability upon satisfaction of the following conditions:

> (1) the seaman must have consciously assumed a duty as a term of employment; (2) the dangerous condition that injured the seaman must have been created by the seaman or could have been controlled or eliminated solely by the seaman in the proper exercise of his or her employment duties; and (3) the seaman must have knowingly violated a duty consciously assumed as a condition of employment.

Northern Queen v. Kinnear, 298 F.3d 1090, 1096 (9th Cir. 2002) (citing Moore v. The Sally J., 27 F.Supp.2d 1255, 1262–63 (W.D.Wash. 1998)).

The parties do not point to case law in this Circuit discussing the primary duty rule, but the Ninth Circuit provides ample guidance. In a case with similar facts, the Ninth Circuit upheld the district court's entry of judgment, following a trial, in favor of the employer pursuant to the primary duty rule. Northern Queen, 298 F.3d 1090. In Northern Queen, a ship and all hands on deck were lost at sea during a violent storm. Id. The estate of the captain sued the employer company of the vessel. Id. Like the present matter, the employer company of the Northern Queen was owned jointly by the captain and his mother. Id. The district court held that as both the captain and the owner of the vessel, and given the facts determined at the trial, liability could not attach as to the captain against the employer pursuant to the primary duty rule.

The Ninth Circuit affirmed the district court's finding, in a two to one decision, explaining that the captain/owner consciously assumed a duty, could have controlled or eliminated the dangerous situation by navigating away from the storm and that the captain knowingly violated his duty. Northern Queen, 298 F.3d at 1096. Defendant argues that Northern Queen is dispositive and that the elements of the primary duty doctrine are satisfied here.

9

Defendant's argument is not without force; however, at this juncture and given the limited facts in the record, as well at the fact that expert opinions have not yet been procured, summary judgment on this issue is not warranted that this time. Unlike the record in Northern Queen, which included trial testimony and fact finding, the parties are only at the precipice of discovery. Moreover, even though the record before the Court is highly suggestive of satisfaction of the first two elements under the primary duty rule, there is a question of fact as to whether Walker's actions or inactions present a momentary lapse of judgment or, as the dissent makes clear in Northern Queen, rise to the requisite level of awareness of consciousness of a knowing violation of Walker's duty. See Bernard v. Maersk Lines, Ltd., 22 F.3d 903, 907 (9th Cir. 1994) (The primary duty rule "does not apply to a momentary lapse of care by an otherwise careful seaman.")

Here, summary judgment is inappropriate where there is a question of fact as to whether "there [is] evidence of a conscious disregard of the seaman's duties[.]" Northern Queen, 298 F.3d at 1098. As a result, summary judgment is denied on this basis.

1. **Jones Act Negligence**

Under traditional negligence principles, the Jones Act, 46 U.S.C. § 2104, et seq., affords a seaman recovery "for personal injuries suffered in the course of his or her employment in an action at law[.]"Fasold v. Del. River & Bay Auth., 117 F. App'x 836, 838 (3d Cir. 2004). The Jones Act requires that employers provide the seaman with a safe place to work. Id. The standard is not perfection, as employers are only required to guard against risks or dangers which were known, or by the exercise of due care, should have been known. Id.

The elements of a Jones Act negligence claim are duty, breach of duty, notice and causation. Brogan v. United N.Y. Sandy Hook Pilots' Ass'n, Inc., 213 F. Supp. 2d 432, 435 (D.N.J. 2002). Recovery is permitted under the Jones Act if the "employer's negligence is the cause, in whole or in part, of [the] injury." Id. (citing Ribitzki v. Canmar Reading & Bates, Ltd., 111 F.3d 658, 662 (9th Cir.1997)). Liability attaches under the Jones Act where an owner has both notice of an unsafe condition and an opportunity to correct that condition. Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1976). Defendant argues that summary judgment is warranted as to this claim because Walker testified in deposition that he did not have prior notice that there was an unsafe condition on the Vessel. Summary judgment is denied on this claim for the following reasons.

Walker's testimony that he was unaware of the dangerous condition aboard the Vessel is not enough to warrant summary judgment. "The standard of care is not what the employer subjectively knew, but rather what it objectively knew or should have known." Colburn, 883 F.2d at 374 (quoting Turner v. Inland Tugs Co., 689 F. Supp. 612, 619 (E.D.La. 1988) (internal quotation omitted). There is a question of fact related to what Walker should have known that precludes summary judgment at this time. In addition, Walker argues that expert testimony will shed light on the condition of the Vessel at the time of the accident. For this reason, summary judgment is denied.

Moreover, the standard of proof for causation is relaxed in claims made under the Jones Act. Id. The Third Circuit has held that "[c]ausation is satisfied if 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . .'" Wilburn v. Maritrans GP, Inc., 139 F.3d 350, 357 (3d Cir.1998) (citing Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506 (1957)).

This "featherweight causation standard" allows a claimant to survive summary judgment by presenting "even the slightest proof of causation." Ribitzki, 111 F.3d at 664. The Third Circuit stresses that only in "those extremely rare instances" is summary judgment appropriate in cases involving seamen. Fasold, 117 Fed. App'x. at 838 (citing Southard v. Independent Towing Co., 453 F.2d 1115, 1118 (3d Cir. 1971)). "Issues of negligence in a Jones Act suit are questions for the jury to determine, and the jury plays a preeminent role in Jones Act cases." Southard, 453 F.2d at 1118 (internal quotations omitted). Summary judgment is denied as to the Jones Act claim.

   2. **Unseaworthiness**

Walker also alleges that the Vessel was unseaworthy and that he is accordingly entitled to recovery for his personal injury. "[T]he owner of a vessel has an absolute and non-delegable duty to provide a seaworthy ship." Fasold, 117 Fed. Appx. at 838 (citing Mahnich v. S. Steamship Co., 321 U.S. 96, 102 (1944)). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." Brogan v. United N.Y. Sandy Hook Pilots' Ass'n, 213 F. Supp. 2d 432, 438 (D.N.J. 2002) (quoting Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960)).

There is a genuine issue of material fact regarding whether or not the Vessel was reasonably fit for its purpose. In addition, given Plaintiff's assertion that expert testimony will shed light on this issue, summary judgment is premature. As a result, Defendant's motion is denied.

## IV. <u>Conclusion</u>

For the reasons set forth herein, summary judgment is denied. An appropriate Order shall issue.

Dated: December 17, 2014

<u>s/ Joseph H. Rodriguez</u>
HON. JOSEPH H. RODRIGUEZ
United States District Judge
